## FORFEITURE OF LEASE FOR SELLING LIQUOR ON SUNDAY.

[Circuit Court of Wood County.]

### CORA L. MOSER v. WILLIAM · L. STEBEL.

Decided, November 24, 1906.

*Landlord and Tenant—Injunction by Landlord—Against Tenant Who Sold Liquor on Sunday—Forfeiture of the Lease under Section 4361—Application of the Common Law—And of Section 4364—Proof upon which Forfeiture may be Based—Forcible Detainer—Lien upon the Premises under the Aiken Law—Not Applicable to a Pre-existing Lease—Fines under the Penal Statute and Damages in a Civil Action—Estoppel.*

1. Section 4361, in so far as it provides for the forfeiture of the lease of premises upon which intoxicating liquor has been sold contrary to law, is declaratory of a principle that existed at common law, and which exists independent of the statutory enactment.

2. The sale of liquor on Sunday invalidates, *eo instanti*, the lease of the premises upon which the sales are made, notwithstanding the selling of liquor on Sunday had not been declared unlawful at the time of the enactment of Section 4361.

3. It is not necessary that a landlord, seeking to forfeit a lease because of the unlawful sale of intoxicating liquors on the premises, should bring a criminal prosecution and establish beyond reasonable doubt that the lessee has violated the law with reference to liquor selling. It is enough if he proceed in a court of civil jurisdiction and by the amount of proof requisite in such a tribunal establish the fact that the defendant has violated the law, whereupon the common law principle applies, terminating the tenancy as of the time of the unlawful act.

4. Inasmuch as no state can pass a law which impairs the obligation of contracts, the lien for the tax of $1,000 under the Aiken law probably does not attach to property held by the liquor seller under a lease which antedates this law.

5. The position of a tenant whose tenancy has been forfeited by his own unlawful act, is analogous to that of one holding over his term, and if his continued possession and use of the premises for selling liquor is likely to endanger his landlord's title by placing a statutory lien thereon, the tenant being insolvent, ground is afforded for the protection of the landlord by injunction,

WILDMAN, J.; PARKER, J., and HAYNES, J., concur.

The case of Moser v. Stebel presents the following issues: Cora L. Moser is the owner of a certain saloon property in the village of Perrysburg which at the time of some of the transactions involved in this case was in the occupancy and possession of the defendant, Stebel, as her tenant. A suit was brought by her in the court below to enjoin him from continuing the saloon business upon said premises and to declare the lease forfeited by reason of unlawful sales said to have been made by him upon a Sunday prior to the filing of the petition. She alleged, first, that he had forfeited his rights under the lease by his violation of the law in the respect already referred to; second, that the so-called Aiken law had shortly before been passed by the Legislature, which law imposed a tax upon the business of selling liquor to the amount of one thousand dollars per annum, and provided that it should become a lien upon the property wherein the business was conducted. The petition alleged also that the plaintiff had begun proceedings in forcible detainer against the defendant to eject him from the premises in controversy. In addition to these averments, and as a reason for affording her the protection which she seeks, she alleged the insolvency of defendant.

The case was tried in the court below upon affidavits which had been used in presenting a motion to dissolve a temporary injunction allowed by the court, and having been submitted to the court, proceeded to final decree and was subsequently appealed to this court. Since its appearance here a supplemental petition has been filed by the plaintiff, alleging that the forcible detention suit mentioned in her petition below has gone to judgment, resulting in her favor, and that the defendant has thereupon vacated the premises, so that she has been restored to possession. There seems to be not very much left for this court to determine under an adjudication as to the rights of the parties except with reference to costs as based upon the claims presented by the pleadings and the facts as existing at the inception of the suit. These are substantially as follows:

On a certain day—the Sunday prior to the beginning of this suit—the defendant, Stebel, being in the possession of the prem-

ises in controversy, made sales in violation of the Sunday law. It seems to be conceded that the defendant is insolvent—at least no counter-affidavits have been filed to those which make the assertion of his insolvency.

The question is raised by the defendant whether the making of Sunday sales in violation of the law would result in the forfeiture of his rights under the lease by virtue of any suit or otherwise. The section of the statute which has been most discussed in this respect is Section 4361, which it has been stated is the basis of the plaintiff's claim that the defendant had forfeited his leasehold; it reads:

"A married woman shall have the same right to bring suits and control the same, and the amount recovered as a *femme sole;* all damages recovered by a minor under this chapter shall be paid either to such minor, or to his or her parent, guardian or next friend, as the court shall direct; the unlawful sale or giving away of intoxicating liquors shall work a forfeiture of all rights of the lessee or tenant under any lease or contract of rent upon premises where such unlawful sale or giving away takes place; and all suits for damages under this chapter shall be by civil action in any court having jurisdiction thereof."

Much of this section is irrelevant to the issue between these litigants, except as it may throw light upon the question presented by counsel for the defendant whether this clause as to forfeiture has any reference to sales of this kind; that is to say, sales in violation of the Sunday law. The section concerning this provision is found incorporated in the statute providing for civil damages for unlawful sales of liquor whereby injury has resulted to some person or persons. It is to be noted, however, that this clause has no direct reference to civil damages. Its reference is to violations of the penal law; "the *unlawful* sale or giving away of intoxicating liquor shall work a forfeiture of all rights of the lessee or tenant under any lease or contract of rent upon premises where such *unlawful* sale or giving away takes place;" and though it may have required an unlawful sale to justify a suit for civil damages, as has been held by our Supreme Court, still it seems that this forfeiture is not upon the ground that damages have accrued to any person civilly,

but solely upon the ground that one of the penal laws has been violated.

. It is insisted by counsel for defendant that in the origina¹ civil damage act the inhibition against selling liquor on Sunday was not one of the clauses included. We think, however, that this question can be disposed of without tarrying very long to consider whether Section 4361 contemplated all unlawful sales, or only such sales as at the time of the original enactment were made in violation of law, such as selling to drunkards, minors, etc. Our judgment is that this section does apply; in other words, that we are to treat the clause as applying to all unlawful sales; that the scope of the section is broad enough and that no substantial reason can be found for limiting it to the kinds of sales that were made unlawful at the time the section was first inserted in the law.

If at that time it applied only to unlawful sales to minors, drunkards, etc.—but if by statute it was subsequently made unlawful to sell upon Sunday—then this section applied to such new unlawful sales.

However, as I say, we are not forced to depend entirely upon this section. It seems to us that it is in a measure declaratory of a principle that existed at common law and which still exists independently of the statute.

Let us look for a moment in passing and before treating further this question, at Section 4364, which provides:

"If a person rent or lease to another, any building or premises to be used or occupied in whole or in part, for the sale of intoxicating liquors, or permit the same to be so used or occupied in whole or in part, such building or premises so leased or occupied shall be held liable for and may be sold to pay all fines, costs and damages assessed against any person occupying the same."

In other words, by Section 4364, fines for the violation of any law, including the Sunday law, are made a lien upon the premises where the business is conducted and where the unlawful sales are made. Now in connection with that, I invite attention to the case of *Mullin* v. *Peck*, 49 O. S., 447, where it is held:

"It is not essential to the right of the plaintiff in an action under Section 4364 of the Revised Statutes, to subject the premises where intoxicating liquors are unlawfully sold to the payment of damages caused by such sales, either that the premises should have been leased for the purpose of selling liquor thereon in violation of law, or that the owner or lessor should have knowledge that such liquors were to be sold thereon, or knowingly permitted the sales which caused the damages. Such action may be maintained, if the premises were leased to be used for the sale of intoxicating liquor, or were permitted by the lessor to be so used."

If they were leased for the purpose of carrying on the saloon business, even lawfully, but if the person in possession carried it on unlawfully and thereby became liable to be sued for damages, the premises would be charged with the payment of such damages. Now there is no distinction in principle between the lien for damages and the lien for fines, because they are both embodied in Section 4364, and in the case of *Simpson* v. *Serviss et al,* 3 C. C. R., 433, decided by the Circuit Court of Clark County, Judges Stewart, Shauck and Shearer, the same principle was applied to the lien for fines, as follows:

"The lien for the assessments and penalties prescribed by the act entitled, 'An act providing against the evils resulting from the traffic in intoxicating liquors,' passed May 14, 1886, attaches to the real property on and in which the business of such traffic is conducted by a lessee, although the same is so conducted without the knowledge or consent of the lessor or owner of the premises, and in violation of the conditions of the lease."

So we have these two decisions; one of the Supreme Court and the other of a circuit court, holding respectively that this lien made by Section 4364 of the Revised Statutes is imposed upon the premises even if the unlawful sales in one case occur or in the other case the liability for injuries accrues without the knowledge or consent of the lessor. I cite these in view of the claim of danger that might accrue to the lessor in this case in another respect—in respect to the tax which has been imposed by the Aiken law, and which may also become a lien upon the property, and I cite it also in connection with the case of *Thompson* v. *Ackerman,* 21 C. C. R., beginning at page 741, and with

especial reference to the opinion found on page 748—the opinion of Judge Mooney. This was not a proceeding or action with reference to the unlawful sales of liquor, but it had reference to the use of leased premises for the purpose of gambling in violation of another act, and in violation of the statute which in itself makes a forfeiture of the lease by reason of such use of the premises in violation of the gambling law.' In the discussion of the questions involved, Judge Mooney says, quoting from 4 Kent's Commentaries, 12:

"If the tenant for life or years aliened his land by feoffment, this act was, at common law, an implied forfeiture of the estate, and the reversioner might enter as for a breach of a condition in law. These estates were likewise subject to forfeiture, not only for waste, but for any other act which in the eye of the law tended to defeat or divest the estate in reversion or pluck the seigniory out of the hands of the lord. It was a tacit condition annexed to every tenancy, that the tenant should not do any act to the prejudice of the reversion."

Judge Mooney cites also Wright on Tenures, page 203, and Taylor on Landlord and Tenant, Sections 271, 272 and 488, and adds:

"It can not be believed that the law which decrees a forfeiture for attorning to a stranger—a void thing and creating no rights as against the landlord—will not so decree when by the tenant an act is done which puts a valid lien upon the landlord's estate, perhaps for an amount which will consume the entire reversion. The liability to loss of his property placed upon the landlord, whether he be the lessor or the grantee of the lessor; the violation of his common law duty by the tenant who conducts gambling upon the leased premises; the purpose of our legislation which is to effectively suppress gambling, the duty of the landlord which is to hinder or prevent the unlawful acts upon his premises, all permit, if indeed they do not require, the lessor's grantees to hinder gambling upon his premises by expelling therefrom a tenant whose criminal act may deprive the landlord of his entire estate in reversion. Having imposed this liability upon the landowner, it would seem a hardship if a way were not provided by which the liability could be avoided. We believe that that way has been provided by the common law, and that it must be held that it is a tacit condition annexed by law to all tenancies that the lessee or his assignee will not by his unlawful act

cause a forfeiture of the landlord's interest in the leased premises, and for breach of such condition the lessor or his grantee may by an action in forcible entry and detainer enforce a forfeiture and recover possession.''

We concur with this view of the spirit and purpose of the statute and the common law with reference to the acts of a tenant which might amount to a waste of the landlord's estate; a waste of it by the destruction of the tangible property itself, or a waste of it by putting in peril of destruction the landlord's title. And if a tenant, without the knowledge or consent of the landlord, may do acts with reference to or upon the property which he holds as tenant which might place thereupon a lien perhaps to the full value of the property, so that the landlord is in danger of losing his entire estate, it would seem that equity would justify an interposition of a court to protect the landlord from such result, unless he has an adequate remedy at law. It is urged here that he has such a remedy; that he may obtain a judicial forfeiture of the lease by proceedings before a justice of the peace in forcible detention, and that is the tenor of the decisions—some of them; it is the decision in the circuit court report to which I have referred.

In the case at bar, a proceeding before a justice of the peace to declare the tenancy forfeited in fact and ousting the defendant from the premises, was maintained and judgment was obtained, so that for the mere purpose of declaring a forfeiture of the lease, we do not think that the present action would be maintainable. It remains to be seen, however, whether or not certain rights did not accrue to the lessor by reason of the Aiken law, which provides that, during the term of the lease, if the business of liquor selling is continued therein, a lien for a thousand dollars will be placed upon the property to secure the tax imposed by the law. The only thing sought in this suit is a discontinuance of the business under the circumstances disclosed. The statute provides that the continuance in the business or the conducting of the business shall subject the person conducting it to the tax of one thousand dollars and that the tax shall become a lien upon the property on the 28th day of May. It seems that this act was to go into force and the lien attach

only two days after the date when the petition herein was filed; the proceeding had been begun upon the same date in forcible detention to procure a forfeiture of the lease and eject the tenant from the property, but the time was too short to stop him in the continuance of the business before the lien under the act would attach.

What, then, were the rights of the lessor? The law was not quick enough. By the tenant's unlawful act he had forfeited the right to continue business under his lease and forfeited his right to the possession of the leased property. He was like a defendant holding over after his term had expired. He was subject to be dispossessed, but while still in possession and before, under legal procedure, he could be dispossessed, he was liable to impair his lessor's title by continuing in the business.

Another question arises in this immediate connection which should be met and passed upon. If the defendant had had a vested right to remain in possession and continue the business, the lien might not have attached to the property, because this Aiken law did not antedate the date of the lease, and we have the general rule that no state can pass a law which will impair the obligation of contracts. The act was in fact passed long after the date of the lease and it might not be a valid enactment, so far as applicable to this property. In other words, if the lessor had passed all her rights in the property to the defendant so far as possession and use are concerned, so that those rights had vested and remained vested in the defendant, and then the act was passed authorizing the placing of a lien upon her property, it is my judgment, at least, and I think the judgment of the court, that such enactment would not become a charge upon the property as against the landlord for the reason that I have stated, and I have found some authority to that effect. In the case of the circuit court report first cited, *supra*, the statute antedated the lease, and the court held that under such circumstances, if the defendant did acts which caused a lien to attach to the property, the statute would take effect, but there is a strong implication that it would be otherwise if the lease were prior to the statute in point of time.

But here we have the case that although a right had once vested in the defendant, that right was forfeited by his own act; the tenancy had been forfeited by him, and our judgment is that it was forfeited by him immediately upon the date of the first unlawful act and that *eo instanti* he lost all his rights under the lease.

It is true that to procure a legal adjudication of that fact the lessor must proceed in some court, but it is not so much to forfeit the lease as it is to procure the declaration of the court that it is forfeited. It is not incumbent upon the lessor to bring a criminal prosecution and to establish beyond a reasonable doubt that the defendant has violated the law; it is enough if the lessor proceed in a court of civil jurisdiction and by the amount of proof required and requisite in such tribunal establish the fact that the defendant has violated the law, and then under the statute the common law principle applies, and thereupon the tenancy is found to have been terminated at the time of the unlawful act.

As already stated, it is like a case of a tenant holding over, and so construing it, what would be the rights of Mrs. Moser after the termination of the lease by expiration of the term of the tenancy, the lessee remaining in possession and attempting to carry on the business of liquor selling, the Aiken law having been passed and by its provisions establishing a lien upon her property if the business should be so continued, a lien which may subject her to the loss of her property? We think that she had no adequate remedy at law; that all she could do was to proceed in equity and by application for an injunction stop the defendant from continuing the business so that the law would not take effect to establish a lien on the property.

If the defendant, having forfeited his rights, had been suffered by her to continue the business until after the date provided by law for the fixing of the lien, she might have been estopped from disputing the lien. It is difficult to see why she would have had any better defense than as if she had rented the property to him after the passage of the law, and in full knowledge thereof.

The finding of the court will be according to the opinon which has been given and judgment will be rendered for the plaintiff, with costs.

I might add a suggestion made to me by Judge Parker as further illustrative of the fact that the forfeiture is not dependent upon an adjudication of the court, but is determined by the very unlawful selling itself—that the lessor might have possibly reposssessed herself of the property without waiting for an adjudication. I think that is true; she had the right, but her rights in a court of equity are not dependent upon the possibility that she might by force put the defendant out. It is not indicated here that she could have obtained it without a breach of the peace or trouble, and she had a right to appeal to the court to prevent him from doing any act to her injury while he remained in the unlawful possession of her premises.

*Fell & Schall, F. P. Riegle* and *Jas. O. Troup,* for plaintiff.
*Baldwin & Harrington,* for defendant.